## MAYERS v. HIRSCHMAN SHOE CO. et al.

No. 5436. Decided December 27, 1934. (38 P. [2d] 1094.)

*S. R. Thurman* and *Irvine, Skeen & Thurman*, all of Salt Lake City, for appellants.

*Allen T. Sanford, of Salt Lake City*, for respondent.

STRAUP, Chief Justice.

On October 25, 1923, the plaintiff as lessor leased to the Hirschman Shoe Company for a term of ten years beginning July 1, 1926, and ending June 30, 1936, the basement and first floor of a building and a one-story building in the rear, in Salt Lake City, upon an agreed rental of $84,960, payable in installments of $645 a month for the first five years and $771 a month for the second five years. By the terms of the lease, the plaintiff was given a first lien on the store fixtures, furnishings, counters, lounges, office furniture, and all other personal property installed or possessed by the shoe company in the conduct of a retail shoe business to be carried on by it on the leased premises. The execution, terms, and conditions of the lease are admitted.

The chief contention of the parties is as to whether the lessee, the shoe company, vacated and abandoned the premises, or whether it wrongfully was evicted therefrom by

the plaintiff. The shoe company, in pursuance of the lease, took possession of the leased premises, and carried on a retail shoe business, until some time prior to January 31, 1931, when, as the plaintiff contends, the company vacated and abandoned the property, the defendant contending that at that time it was evicted by the plaintiff.

The lease further provides that, in the event the lessee abandoned or vacated the premises, or breached any of the conditions of the lease, the lessor had the right to reenter the premises and relet them on such terms as the lessor saw fit, and, if by reletting them a sufficient sum was not realized to satisfy the payments of rent as stipulated in the lease, the lessee agreed to pay the deficiency monthly.

By the complaint and reply of the plaintiff, it among other things in substance is alleged that at the time of the filing of the complaint and prior thereto the shoe company became and was insolvent; that its liabilities exceeded $140,000, its assets not to exceed $10,000; that it had sold substantially all its merchandise and quit business; that it made a pretended sale of a remnant of its stock and property remaining in the premises, abandoned and vacated the premises, and turned the possession of the remnant of all goods and fixtures remaining in the premises to a pretended vendee, to deprive the plaintiff of her lien, and in accordance therewith the vendee, with knowledge of plaintiff's lease, was about to remove the property so turned over to him, whereupon the plaintiff procured a writ of attachment and placed the same in the hands of the sheriff for service, who attached and seized all of the property so left and still remaining on the leased premises, in value about the sum of $1,000. It was further alleged that at the commencement of the action there were unpaid on the leased premises approximately $50,000, that to avoid plaintiff's lien and the payment of any future rentals, the shoe company disposed of its merchandise, sold in bulk the remnant of its stock, fixtures, and other property to another who was about to remove the same to avoid plaintiff's lien

thereon, and that to protect her lien plaintiff caused the attachment to issue, and, finding the premises abandoned by the shoe company, the plaintiff entered into the possession thereof to relet them in accordance with the terms of the lease.

A receiver February 2, 1931 (whether in this or in another action not shown), was appointed of the property of the shoe company; but it is not made to appear that the receiver took, or attempted to take, possession of any property of the shoe company, or did anything in virtue of his appointment as receiver. He, however, answered the complaint on his behalf and also on behalf of the shoe company. The execution, terms, and conditions of the lease were admitted by him. He denied the allegations of the complaint that the shoe company had abandoned or vacated the leased premises, and alleged that on January 31, 1931, when the action was commenced, all rents and rentals then due were fully paid, and no rent then due, and that the plaintiff, in violation of the terms and conditions of the lease, through her agents and under her direction, entered into and upon the leased premises and unlawfully evicted the shoe company therefrom, and thereby canceled and terminated the lease.

The plaintiff filed a supplemental complaint wherein it is alleged that, since the commencement of the action, installment rental payments matured for the months of February, March, and April, 1931, a total for the three months of $1,890; that the plaintiff repossessed the premises for the purpose of re-renting the same under the terms of the lease; that she had temporarily rented the front part of the leased premises as a fruit stand, and had received a rental therefrom amounting to $225, which she credited on the rental due from the shoe company, and prayed judgment against it for the difference amounting to $1,665.

The cause was tried to the court without a jury. Upon the evidence adduced, the court made findings of fact substantially as alleged in plaintiff's complaint and reply.

With respect to the main issue, as to whether the shoe company had abandoned or vacated the premises or whether the plaintiff had evicted the shoe company from the premises, the court found:

"6. That during the month of January, 1931, the defendant, Hirschman Shoe Company, sold substantially all its stock in trade and announced that it was quitting business and remnants of its stock, together with fixtures and furniture of various kinds, it sold not in the course of business, but in bulk to H. Roe, without notice to or waiver by creditors of Hirschman Shoe Company, and H. Roe was about to remove the same from said premises when they were attached under an attachment issued in this case, and on the 31st day of January, 1931, the said defendant, Hirschman Shoe Company vacated and abandoned said premises and plaintiff thereafter under the terms of her lease, entered into the possession of said property for the purpose of conserving the same and reletting it.

"7. That the defendant, Hirschman Shoe Company, was attempting to remove its said property in order to avoid the payment of rent on said premises after the 31st day of January, 1931, in order to avoid and evade the plaintiff's lien upon the remnants of the stock, furnishings and fixtures which were sold to H. Roe.

"8. That on the 31st day of January, 1931, the plaintiff having information that the defendant, Hirschman Shoe Company, was about to abandon and vacate said premises, caused a writ of attachment to be issued in order to protect her landlord's lien and placed said writ of attachment in the hands of the Sheriff of Salt Lake County and that the Sheriff levied upon the remnants of stock of merchandise and furniture and fixtures which the Hirschman Shoe Company had brought on the premises and which it pretended to sell to H. Roe, and there was no eviction whatsoever of the Hirschman Shoe Company or its agents, and the said Hirschman Shoe Company abandoned said premises and the plaintiff, under the terms of her lease, thereafter took possession of the same."

The court further found that the shoe company did not pay any rent which became due and payable after the month of January, 1931, and that at the time of the trial there were matured rentals due for three months amounting to $1,890, from which the court deducted $225 received by the plaintiff on reletting a portion of the premises.

The court further found that the plaintiff and defendant by writing had stipulated that the value of the goods attached

under the writ of attachment was $1,000, and, to save costs and expenses, the goods and property were delivered to the defendant or its transferee, and the plaintiff in lieu thereof given an undertaking conditioned for the payment of $1,000 and interest to her, if it finally was determined she had a lien upon the property in the amount of $1,000 or more, and, if not, she be given a preferential claim against the defendant for $1,000. The court further found that the plaintiff had a lien on the property so attached and seized under the attachment.

Judgment thus was entered in favor of the plaintiff and against the shoe company for the matured rental amounting to $1,665, declared a lien on the attached merchandise, fixtures, and furnishings of the shoe company, and, because of the stipulation whereby the attached personal property was delivered over to the possession of the defendant, the plaintiff was given the right to enforce the undertaking given in lieu of the attachment.

From the judgment, the receiver and the shoe company have prosecuted this appeal. The chief assignments relate to the findings that the shoe company had abandoned and vacated the leased premises, and that the plaintiff had not evicted the shoe company therefrom. It is contended that the findings are against, and not supported by, the evidence; that on the record the shoe company was entitled to findings that it was unlawfully evicted from the premises, thereby terminating the lease, and the plaintiff not entitled to judgment for the alleged and found matured and unpaid rentals.

There is not much dispute as to the law applicable to the case, each party substantially agreeing that, if the shoe company was in possession of the premises and in the conduct of its business, and had not breached any of the conditions of the lease, and if under such circumstances the plaintiff, in violation of the terms of the lease as alleged by the receiver and the shoe company, unlawfully or wrongfully evicted the shoe company from the premises, the lease,

so far as the plaintiff was concerned, was terminated, and hence she was not entitled to any award for unpaid rentals. If, on the other hand, the evidence fairly and reasonably supports the findings of the court as to an abandonment or vacating the leased premises by the shoe company, then the judgment should be affirmed.

It is argued that, when the sheriff under the writ of attachment at 2 or 2:30 o'clock on the afternoon of January 31, and when no rent was due until the next day and none unpaid, seized all the goods and furnishings then remaining in the building, demanded and was given the key to the building, locked it up, and made the plaintiff's son the custodian or keeper of the goods, the shoe company was thereby evicted from the premises. No claim is made that the attachment was improperly issued or levied. No motion was made to dissolve it. It was released by the giving of the undertaking referred to. In view that the Hirschman Company had sold all its goods and merchandise, including property on which the plaintiff had a lien about to be removed from the premises, the Hirschman Company —hopelessly insolvent, and about to go in the hands of a receiver, advertising to quit and go out of business the plaintiff to protect her lien—had just cause by attachment to seize the property seized by her. That is not disputed. What is claimed is that, while the sheriff was authorized and justified to seize the goods and take them into his custody, still, as the rental was paid up for all day of January 31, the shoe company was entitled to be in possession of the leased premises for and during the whole of that day, and thus, when the sheriff not only seized the goods in the building, but also locked it up, the shoe company for the rest of the day was deprived of possession and evicted.

Such, as it seems to us on the record, is but a survey of the surface and not of the real situation. There is good and substantial evidence to show that the shoe company not only had sold and was disposing of all of its goods and

quitting business, but also to indicate an intention to vacate and abandon the building itself. It had been operating two stores; one in Ogden, the other in Salt Lake. Prior to January, 1931, it sold the store at Ogden. The store at Salt Lake was operated at a loss. For some time prior to the commencement of the action the company was hopelessly insolvent with liabilities of over $140,000 and assets of only about $30,000 or $40,000. For more than a year prior to the commencement of the action, the Salt Lake store was operated by a committee appointed by creditors trying to keep things together and going. It was operating at a loss. Hirschman, of the Hirschman Shoe Company, had given up his interest in the store with the intention of associating with another shoe store. During January, 1931, and prior to the commencement of the action, the shoe company advertised that it was going out of business and sold all of its merchandise except a remnant thereof, which, and the fixtures and furnishings, it two days before the commencement of the action sold to another, who was removing the same with truck backed up against the curb when the writ of attachment was levied. The manager of the company testified that he had quit his employment with the company, and two days before the attachment had accepted another job. As testified to by some of the witnesses, when the sheriff came to the store to levy the writ, the company had closed up the store; that it ran a sale for a month and advertised it was going out of business; that it had nothing more to sell; that the company, two or three days before the attachment, sold out everythig left in the store, except the gas furnace, which belonged to the plaintiff. When the sheriff went to the store to make the levy, the shelves were all empty, some merchandise piled upon the floor, the store torn up, and so had been for several days; a sign tacked up directing people to pay bills and accounts at the desk, and apparently no business otherwise conducted at the store. The sheriff demanded the keys from the manager, who after communicating with the attorney for the company

and with others, without objections handed the keys over to the sheriff. No claim was made by the shoe company that it for any purpose desired longer to occupy the leased building or longer to operate under its lease. Everything indicated it had quit the business and was through and whatever assets there were undisposed of, if any, to be taken over by the receiver.

We thus think the evidence ample to support the findings of the court. The judgment is therefore affirmed, with costs to respondent.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.